**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| RADHA GEISMANN, M.D., P.C., a Missouri professional corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) | |
| | ) | No. 09-cv-5114 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge: Young B. Kim |
| v. | ) | |
| ALLSCRIPTS-MISYS HEALTHCARE | ) | |
| SOLUTIONS, INC., ALLSCRIPTS, LLC and | ) | |
| ALLSCRIPTS HEALTHCARE SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' OFFER OF JUDGMENT OR, IN
THE ALTERNATIVE, AMENDED MOTION FOR CLASS CERTIFICATION**

NOW COMES Plaintiff, Radha Geismann, M.D., P.C. ("Plaintiff"), and for her Motion to

Strike Allscripts-Misys Healthcare Solutions, Inc. ("Defendant" or "Allscripts")'s Offer of

Judgment Pursuant to Rule 68 or, alternatively, for Class Certification pursuant to Fed. R. Civ. P.

23(a), (b)(3) and (g), states as follows.

**MOTION TO STRIKE RULE 68 OFFER OF JUDGMENT**

1.      Allscripts has offered relief to Plaintiff only an individual basis.  The offer is

improper and rejected because this is a class action and Plaintiff seeks class-wide relief.  Plaintiff

filed this case as a class action and is not using the class action device to achieve an individual

recovery.  Defendants cannot use a Rule 68 offer to "pick off" Plaintiff's claims before the Court

can decide class certification.  The Court should either strike Defendants' Rule 68 Offer of

Judgment, order Defendants to withdraw it, or certify the class.

2.      On July 17, 2009, Plaintiff filed a Class Action Complaint against Defendant

Allscripts Healthcare Solutions, Inc. ("Allscripts Healthcare") in the Circuit Court of Cook

County, Illinois, County Department, Chancery Division.  Plaintiff alleged that Allscripts

Healthcare sent unsolicited fax advertisements to Plaintiff and a class of similarly situated

persons in violation of the Telephone Consumer Protection, 47 U.S.C. § 227 ("TCPA"), the

Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") and

of the common law of conversion.

3.      On July 17, 2009, Plaintiff filed a Motion for Class Certification.  Exhibit A.

4.      On August 20, 2009, Allscripts Healthcare removed Plaintiff's Class Action

Complaint to this Court.  Doc. 1.

5.      On October 13, 2009, Plaintiff filed a First Amended Class Action Complaint

("Complaint") naming Allscripts and Allscripts, LLC as additional defendants.  Doc. 14.

6.      On December 2, 2009, Magistrate Judge Schenkier ordered the parties to first

pursue discovery limited to the issue of Rule 23 "numerosity" of the class.  Doc. 27.  On

December 22, 2009, Judge Schenkier reiterated his instructions:

> Discovery to be propounded at this time shall be limited to numerosity.  Any
> discovery served by plaintiff on matters other than numerosity is stricken, without
> prejudice to the ability of the plaintiff to serve full discovery on other class issues
> and merits issues if the case, after the focused numerosity discovery, does not
> settle.  February 2, 2010 is the deadline solely for providing information
> concerning numerosity.  Any dates for other discovery on Rule 23 issues or the
> merits will take place on a schedule to be set at a later time.  [Doc. 35]

7.      On July 2, 2010, the Court noted that the parties were negotiating a class-wide

settlement:

> Defendants are in the process of responding to plaintiff's class-wide settlement
> demand….  At the next status hearing, the parties are to report whether they need
> additional time to negotiate a settlement or whether they need to proceed with
> class certification.  [Doc. 64]

8.      On September 15, 2010, Allscripts surprisingly made a Rule 68 offer of judgment

to Plaintiff, offering:

> to allow judgment to be taken against it in this action in the amount of $1,500.00
> (One Thousand Five Hundred U.S. Dollars) for each and every unsolicited

> facsimile advertisement … sent by Allscripts and received by [Plaintiff].
> Allscripts also agrees to pay [Plaintiff] any costs which it might recover should it
> prevail in this action, plus reasonable attorneys' fees, to be determined by the
> Court. [Exhibit B].

Allscripts made its offer only to Plaintiff, even though Plaintiff filed this lawsuit on behalf of a class and the parties have been pursuing class discovery. Plaintiff rejects any offer of individual settlement.

9.      Defendants' offer of judgment is an improper attempt to cancel the class action by "picking off" the class representative. Defendants offer Plaintiff $1,500 for each fax sent to Plaintiff. Exhibit B. The offer isn't for complete relief even to Plaintiff, because Defendants offer the costs and attorneys fees sought in Count III of the Amended Complaint only "should it prevail in this action." Id. In any event, Plaintiff rejects the offer of individual relief.

10.      It would be improper for Plaintiff to accept a "bribe" to drop the class's claims. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) (noting that it would be improper for a person to "use the class as bait to attract a better offer, then cash in by withdrawing the class claim"); *Janikowski v. Lynch Ford, Inc.*, No. 98 C 8111, 1999 WL 608714, *2 (N.D. Ill. Aug. 5, 1999) ("As the putative class representative, Janikowski could not consider a settlement offer made to her personally."), *aff'd on other grounds*, 210 F.3d 765 (7th Cir. 2000).

11.      Second, the Rule 68 offer appears to be an offer to "pick off" the entire lawsuit. As the *Janikowski* court explained:

> [A] potential conflict of interest arises if a class representative is forced to
> consider a settlement offer made to her personally: "[T]he representative as
> offeree would be forced to balance h[er] personal liability for costs against the
> prospects of sharing with the class in any recovery. H[er] evaluation of the offer
> would therefore be tinged by self-interest and would tend to differ from that of
> absent class members." [*Id.* at *2 (citation omitted).]

The *Janikowski* court granted the plaintiff's motion to strike the offer of judgment. *Id.* at *6.

Other courts have done the same thing. *See Gibson v. Aman Collection Service, Inc.*, No. IP 00-1798-CT/G, 2001 WL 849525, *3 (S.D. Ind. May 23, 2001) (Tinder, J.) ("Plaintiff's motion [to strike] is GRANTED. The offer of judgment is STRICKEN and is therefore of no effect.").

12.     In *Parker v. Risk Mgmt. Alternatives, Inc.,* 204. F.R.D. 113 (N.D. Ill. 2002), the court responded to the defendant's offer of judgment as follows:

> According to defendant, because its <u>Rule 68</u> offer to plaintiff covered the full amount of relief prayed for by plaintiff in his complaint, and because plaintiff rejected that offer, plaintiff's FDCPA claim is moot and the instant case should be dismissed in its entirety. … [D]efendant is incorrect that its offer to plaintiff covered the full amount of relief prayed for by plaintiff in his complaint. Plaintiff's complaint is not only clearly styled as a putative class action suit, but its prayer for relief asks the court to certify the instant case as a class action, appoint plaintiff as the class representative, and appoint plaintiff's attorney as class counsel. … Thus, at the time defendant made its offer, it was well aware that plaintiff sought relief beyond merely his personal statutory damages.

13.     Here, Plaintiff's Amended Class Action Complaint requests that the Court (1) certify the Action Complaint requests that the Court:  (1) certify the class, (2) appoint Plaintiff as the class representative, and (3) award class-wide relief.  Doc. 14 at ¶¶ 4, 5, 15, and 16. Defendants know that Plaintiff seeks class-wide relief, not just Plaintiff's own statutory damages under the TCPA.  Plaintiff understands her duties to the absent class members and will not accept Defendants' individual offer.

14.     The U.S. Supreme Court, numerous federal appellate courts, and many federal and state trial courts all have recognized and held that an individual offer of judgment is improper in the class action context.  In *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980), the Supreme Court observed that allowing defendants to moot class actions strategically, "through entry of judgment over [its] objections ...." attempting to "pick [ ] off ... an affirmative ruling on class certification" before it can be obtained "frustrate[s] the objectives of class actions" and "would invite waste of judicial resources by stimulating successive suits

brought by others claiming aggrievement." *See also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 136 (3d Cir. 2000) (holding that mootness of the named plaintiffs' claims is irrelevant to an overall mootness determination "if those claims were live at the time they moved for class certification"); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 982 (3d Cir. 1992) ("Just as appellate review may relate back to an adverse class certification decision made when plaintiffs had a live claim, so district court review of a pending certification motion relates back to its filing, if plaintiff had a live claim at that time."); *Weiss v. Regal Collections*, 385 F.3d 337, 344 (3d Cir. 2004) ("As sound as is <u>Rule 68</u> when applied to individual plaintiffs, its application is strained when an offer of judgment is made to a class representative. As in *Roper,* allowing the defendants here to "pick off" a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims…."); *Zeidman v. McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981) ("[A] class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when ... there is pending before the district court a timely filed and diligently pursued motion for class certification."); *see also Liles v. American Corrective Counseling Services, Inc.*, 201 F.R.D. 452 (S.D. Iowa 2001) ("[The named plaintiff] filed this action as a class action. As such, she has assumed a responsibility to members of the putative class and this Court has a special responsibility to protect their interests, regardless of whether a motion for class certification has been filed. Hinging the outcome of this motion on whether or not class certification has been filed is not well-supported in the law nor sound judicial practice; it would encourage a "race to pay off" named plaintiffs very early in litigation, before they file motions for class certification.").

15.     Furthermore, the leading treatises recognize the tension between the two procedural rules 23 and 68.  *See, e.g.,* 12 Charles Alan Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE § 3001.1, at 76 (2d ed. 1997) ("There is much force to the contention that, as a matter of policy [Rule 68] should not be employed in class actions."); 13 James William Moore, *et. al*., MOORE'S FEDERAL PRACTICE ¶ 68.03[3], at 68-15 (3d ed.2004) ("policy and practicality considerations make application of the offer of judgment rule to class and derivative actions questionable."); *Newberg on Class Actions* § 15.36, at 115 (4th ed.) ("[B]y denying the mandatory imposition of Rule 68 in class actions, class representatives will not be forced to abandon their litigation posture each time they are threatened with the possibility of incurring substantial costs for the sake of absent class members.").  The more efficient practice— and indeed the practice envisioned by the drafters of Rule 23—is to prevent defendants from thwarting class actions that otherwise meet the prerequisites set forth in Rule 23.

16.     In Defendants' view, taken to its logical extreme, Rule 68 would permit a defendant liable to thousands of class members for nominal claims to ' pick-off' every would-be class representative, forever delaying adjudication of the class claims.  Allowing defendants to pick off named plaintiffs would contravene the very purpose for which class actions were created.  Such a practice contravenes one of the central purposes for the adoption of Rule 68—to avoid unnecessary and protracted litigation—and it encourages a multiplicity of suits.

17.     "The very feature that makes class treatment appropriate-small individual stakes and large aggregate ones-ensures that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class!"  *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991).

18.     The Court should strike Defendants' Rule 68 offer or order them to withdraw it.

## AMENDED MOTION FOR CLASS CERTIFICATION

19.     Alternatively, Plaintiff requests that the Court certify the class.  As indicated above, Plaintiff already filed a Motion for Class Certification.  Exhibit A.  Plaintiff files this Amended Motion for Class Certification now only because of Defendant's Rule 68 offer.

20.     Typically, class certification should be briefed and decided only after discovery regarding the class issues; and here the Court has scheduled such discovery.  *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir.2001)); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.,* 657 F.2d 890, 895 (7th Cir.1981) ("some degree of discovery may be appropriate in certain cases to aid making the necessary class determinations [and that] [t]he pleadings are expected to be of assistance, but more information may be needed").

## FACTS

21.     On April 9, 2008, Defendants faxed an unsolicited advertisement to Plaintiff.  Doc. 14 at ¶ 10, Ex. A.  The advertisement states in relevant part:

- "ARE YOUR PATIENTS STILL GOING HOME WITH A PAPER PRESCRIPTION?";

- "**We will match or beat your injectable medication pricing or we will give you 10% off your next order of pre-packaged medications.**";

- "Ask about our system with **NO START UP COST.** Be sure to look at our software that can simplify your processes.  Go to www.allscripts.com to contact us and fill out a request for Medication Services." (emphasis included in original);

- "Allscripts has repackaged medications for over 20 years and leads the industry in quality, service and availability.  Call today to order from our catalogue of over 2,200 prescriptions medications, injectables, OTCs, and more."

22.     The advertisement violates the TCPA because it does not contain the "opt-out notice" required by the TCPA and FCC regulations.  47 U.S.C.A. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(3)(iv).

23.     Defendants admit that they faxed these advertisements to more than 40 telephone numbers. Exhibit C, Allscripts-Misys Healthcare Solutions, Inc.'s Responses To Request For Admissions, at ¶ 4. Defendants claimed an "investigation continues" regarding whether they faxed the advertisements to more than 10,000 different telephone numbers. Exhibit C at ¶ 7.

24.     Defendants utilized Zetafax software to fax advertisements to Plaintiff and the class. Exhibit D, Allscripts-Misys Healthcare Solutions, Inc.'s Answers To Radha Geimann's First Set of Interrogatories, at ¶ 2; Exhibit E, Allscripts-Misys Healthcare Solutions, Inc.'s Supplemental Responses To Plaintiff's First Set of Interrogatories, at ¶ 9; and Exhibit F, Deposition Transcript of Phillip Winker, at 11:11-15; 13:10-17. Zetafax is a software package that runs on a personal computer network and allows network users to send faxes from their desktop computer. Exhibit D at ¶ 2; Exhibit E at ¶ 9; and Exhibit F at 44:10-45:1.

25.     Defendants have produced several thousand pages of electronic data from the Zetafax software. Exhibit D at ¶ 2. Defendants have not produced all of the relevant Zetafax electronic information they possess. *Id.*

26.     On May 18, 2010, Plaintiff deposed Phillip Winkler ("Winkler"), an "expert desktop support analyst" for Defendants. Exhibit F at 19. Through the use of the Zetafax software, electronic data was saved to one of Defendants' servers. Exhibit F at 11:11-15; 13:10-17; 16:1-7; 44:18-45:1. That data included "everything involved with that user sending faxes. So there would be a transmission that would be in and out, and, essentially, their phone book and their cover page." Exhibit F at 17:12-18:2. Through the electronic data saved by the Zetafax software, Defendants produced twenty-five (25) fax advertisements that are the same or similar to the fax advertisement Plaintiff received. Exhibit F at 33:14-34:8; and "Winkler Exhibit 3."

27.     The electronic data from the Zetafax software includes a log of fax attempts and

successful fax transmissions. Exhibit F at 36:5-23; 42:17-43:13, "Winkler Exhibits 4 and 5." For example, when the transmission records state "SentOK" that means that the fax transmission was successful. Exhibit F at 45:2-11; and 53:2-6. Moreover, the Zetafax records include an image of the subject fax that corresponds to when a fax was successfully sent. Exhibit F at 46:8-13. Winkler could not testify without speculating as to what some of the fax transmission logs represent. Exhibit F at 38:1-6; 43:14-20. As a result, additional discovery is needed to fully understand what the transmission logs represent.

28. Additionally, Defendants produced an Excel spreadsheet of information created using the Zetafax transmission data. Exhibit F at "Exhibit 6"; 48:24-49:3; and 52:4-18. Winkler did not create the spreadsheet, did not know who created the spreadsheet, and had not reviewed the spreadsheet before his deposition. Exhibit F at 47:18-48:16. The spreadsheet appears to prove that Defendants sent thousands of successful faxes. Additional discovery is needed to fully understand what the spreadsheet represents.

29. The discovery to date shows that the Court should certify a Rule 23 class. Plaintiff still needs discovery about the Zetafax electronic data, including whether there is additional relevant Zetafax electronic data available and whether Defendants obtained express invitation or permission before sending the subject faxes. After Plaintiff retrieves this additional information, Plaintiff will be able to accurately identify the entire class.

## LAW

30. The Telephone Consumer Protection Act ("TCPA") forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Plaintiff requests that the Court certify a class, so the claims about Defendants' advertising faxes can be resolved on a class-wide basis.

31.     Class actions promote judicial economy by aggregating small claims into one lawsuit.  Further, "[c]lass actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually.  [M]ost of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

32.     Judges within this District have certified TCPA cases.  *See Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802 (N.D. Ill. 2008) (Bucklo, J.), *app. denied* (08-8012) (7th Cir. Jun 13, 2008) (fax broadcasts were sent *en masse* to recipients on a list of "leads" that were purchased "from a company called Corporate Marketing, Inc."); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (Shadur, J.); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.), *app. denied* (September 9, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) (Kendall, J.) (Exhibit G); *Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) (Hibbler, J.) (Exhibit H); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) (Aspen, J.) (defendant used "WestFax to send at least 380,919 faxes over a three day period.") (Exhibit I); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.) (Exhibit J); and *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.) (Exhibit K).

33.     Other federal courts have certified similar TCPA class actions.  *E.g., Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 645 (W.D. Wash. 2007) (Defendant "obtained the [class

members'] facsimile numbers from Manufacturers' News, a company that apparently compiles contact information for businesses and sells the compilations as databases to third parties."). State courts have certified TCPA actions, too. *See e.g.*, *ESI Ergonomic Solutions, LLC, v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 846 (Ariz. Ct. App. 2002) ("United Artists contracted with ABF, a company in the business of distributing advertisements by facsimile, to send a one-page advertisement for discount movie ticket packages. The following month, ABF transmitted the advertisement to about 90,000 facsimile machines in the Phoenix area."); Am. Home Servs., Inc. v. A Fast Sign Co., Inc., 651 S.E.2d 119 (Ga. Ct. App. 2007) (third party database provider and broadcaster sent 306,000 faxes); and *Travel 100 Group, Inc. v. Empire Cooler Serv., Inc.*, 2004 WL 3105679 (Ill. Cir. Ct. Oct. 19, 2004) (sending faxes to a third party list of over 3,000 fax numbers "may create a presumption that the facsimiles were not legal").

34.     To achieve class certification, Plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied:  (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  To proceed with a class under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

35.     Proposed Class Definition.  Plaintiff proposes the following class definition:

All persons who, between February 11, 2008 and April 26, 2008, were sent telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendants.

36.     Numerosity.  A class must be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  Defendants' advertising fax is a form document, sent to more than 40 telephone numbers.  Exhibit C at ¶ 4.  Moreover, from the records thus far produced it appears that the class contains thousands of persons.  Exhibit F, at "Exhibit 6"; and Exhibit C at ¶ 7.   Therefore, "numerosity" is satisfied.

37.    Commonality.  Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied by showing "a common nucleus of operative fact."  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  A TCPA class satisfied the "commonality" requirement in another case because the defendant "engage[d] in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct."  *Hinman*, 545 F. Supp. 2d at 806-07.

38.    Here, Defendants are alleged to have engaged in standardized conduct involving a common nucleus of operative facts by faxing a form advertisement to Plaintiff and the other class members.  The case involves common fact questions about Defendants' fax campaign and common legal questions under the TCPA, such as:

a.    Whether Defendants violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so;

b.    Whether Plaintiff and the other class members are entitled to statutory damages;

c.    Whether Defendants' acts were "willful" or "knowing" under the TCPA and, if so, whether the Court should treble the statutory damages; and

d.    Whether the Court should enjoin Defendants from future violations of the TCPA.

39.    Typicality.  Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Here, typicality is inherent in the class definition.  Each of the class members was subjected to the same conduct.  Each member's claim is based on the same legal theory as Plaintiff's.

40. <u>Adequacy of Representation</u>.  Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members.  *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

41. Plaintiff understands her obligations and the nature of the claims, is involved in the litigation, and is interested in representing the class and enforcing the TCPA.  Plaintiff and the other class members seek statutory damages under the TCPA.  Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests.  There is no antagonism between Plaintiff's interests and those of the other class members, which is the key factor to determine whether a plaintiff is an adequate representative.  Therefore, Rule 23(a)(4)'s "adequacy" requirement is satisfied.

42. Federal Rule 23(g) also requires that class counsel be adequate.  Plaintiff has retained experienced counsel. Fed. R. Civ. P. 23(g)(1)(A).  Plaintiff's counsel have of experience handling class actions, including those alleging violations of the TCPA.  They have diligently prosecuted this case, and will continue to do so.

43. <u>Predominance</u>.  Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions.  As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute.  Likewise, common fact issues predominate because Defendants are alleged to have acted in the same basic manner toward all class members.

44. The *Hinman* court found predominance because the fax broadcasts at issue were sent *en masse* to recipients on a list of "leads" obtained from a third party.  *Hinman*, 545 F. Supp.

13

2d at 808; *see also Sadowski*, 2008 WL 2224892 at *4-5. The *Targin Sign* court similarly explained:

> [Defendant] Preferred's contention that questions affecting only individual members would predominate over class issues is no better than pure fiction-and a pretty poor quality of fiction at that. Preferred's claimed nightmare of "hundreds or thousands of individual proceedings" that lack common issues is a pipedream rather than a nightmare-it too reflects fanciful frivolousness. Those just discussed factors interact to quantify Preferred's potential exposure, while at the same time solidifying the threshold requirements for class certification. This Court therefore holds that Rule 23(b)(3) is also fully satisfied here. [*Targin Sign*, 679 F. Supp. 2d at 898-99.]

45. <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697). Allowing this class to proceed as a class action would be an efficient use of judicial resources and superior to individual lawsuits. *Hinman* found that "resolution of the [TCPA] issues on a classwide basis, rather than in thousands of individual lawsuits would be an efficient use of both judicial and party resources." *Id.*, 545 F. Supp. 2d at 808; *see also Sadowski*, 2008 WL 2224892 at *5 ("class treatment appears to be the superior method of handling Plaintiff's [TCPA] claims."); *Green*, 2009 WL 1810769 ("Resolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources. The superiority element is satisfied.").

46. Plaintiff requests leave to submit a brief in further support of this motion after securing additional class discovery. Plaintiff has filed this Amended Motion for Class Certification now only because Defendants has made a Rule 68 offer in an attempt to moot Plaintiff's individual claims to avoid the class action.

14

## CONCLUSION

47.    The Court should strike Defendants' offer of judgment as inadequate and inappropriate given the class action allegations made in Plaintiff's First Amended Class Action Complaint.  Alternatively, after discovery and complete briefing, the Court should certify the proposed class, because it meets the requirements of Rules 23(a), (b)(3) and (g).  Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

WHEREFORE, Plaintiff respectfully requests that the Court strike Defendants' offer of judgment or require Defendants to withdraw it; or, in the alternative, certify the proposed class, appoint Plaintiff and Plaintiff's counsel to represent that class, and award such other relief as the Court deems appropriate under the circumstances.

Dated:  September 28, 2010                    Respectfully submitted,


                                              /s  Phillip A. Bock
                                              One of Plaintiff's attorneys

Phillip A. Bock                               Brian J. Wanca
Tod A. Lewis                                  Ryan M. Kelly
James M. Smith                                ANDERSON + WANCA
BOCK & HATCH, LLC                             3701 Algonquin Road, Suite 760
134 N. La Salle St., Suite 1000               Rolling Meadows, IL  60008
Chicago, IL  60602                            Telephone:  847/368-1500
Telephone:  312/658-5500